Omer MOHAMED, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–0503–CR–144.

Court of Appeals of Indiana.

March 8, 2006.

Mark Small, Marion County Public Defender Agency, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Omer Mohamed appeals his conviction on one count of possession of a controlled substance analog, a class D felony.

We reverse.

### FACTS

On the afternoon July 15, 2005, Mohamed was a passenger in a vehicle that was stopped for speeding on I–70 by Officer Keith Hartman of the Indianapolis Police Department. As Hartman approached the vehicle on its passenger side, he smelled a strong odor of vegetation—similar to cut grass—emanating from the vehicle. Hartman observed "two (2) large brown cardboard boxes" on the back seat "directly behind the passenger seat." (Tr. 12, 46). One of the boxes "was torn open," revealing what Hartman "recognize[d] to be khat." (Tr. 12).

Hartman had seen pictures of and learned about khat from material produced by the Drug Enforcement Administration. Hartman testified that this material portrayed khat as "a very distinctive looking plant," which looks like a "a bundle of flower stems with no flower on top of them," "similar to ... rebar," that is "wrapped in a type of leaf." (Tr. 19, 13). Hartman testified that this was what the plant material "in plain view" inside the open box on the back seat of the vehicle looked like, and a photograph thereof was introduced into evidence. (Tr. 20). According to Hartman, the DEA information and his training indicated that the effect of khat was similar to that of marijuana and cocaine. Hartman called for assistance; the driver and Mohamed were removed from the vehicle; and Hartman seized the

two boxes and transported them for secure detention and forensic analysis.

The next day, July 16th, the contents of the two boxes were analyzed by the Marion County Crime Lab. The boxes contained 15 pounds and 14 pounds of vegetation respectively. One box contained 106 "bundles of maroon colored stems wrapped in green leaves" and the other, 91 "bundles of maroon colored stems wrapped in green leaves." (Ex. 4). According to the lab's report of the analysis by chemist Wayne Beasley, "cathinone" and "cathine" were "both present" in the plant material. *Id*.[1]

On July 21, 2005, both the driver and Mohamed were charged with one count of dealing in a controlled substance analog, a class B felony, and one count of possession of a controlled substance analog, a class D felony. Indiana Code section 35–48–1–9.3(a) defines a "controlled substance analog" as

a substance:

(1) the chemical structure of which is substantially similar to that of a controlled substance included in schedule I or II and that has; or

(2) that a person represents or intends to have; a narcotic, stimulant, depressant, or hallucinogenic effect on the central nervous system substantially similar to or greater than the narcotic, stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance included in schedule I or II.

On February 11, 2005, Mohamed waived his right to a jury trial, and he was tried to the bench on that day.

At trial, the Marion County Crime Lab chemist, Wayne Beasley, testified that khat is a plant cultivated in areas of the Arabian Peninsula and Eastern Africa that contains the "natural occurring stimulant compound cathinone." (Tr. 52). Beasley further testified that the chemical structure of cathinone is very similar to the chemical structure of methcathinone—a manmade synthetic chemical that is a Schedule I controlled substance under Indiana law. *See* I.C. § 35–48–2–4(f). According to Beasley, and the exhibits portraying their respective organic composition, cathinone has "two hydrogen atoms" that are "hooked on" to its nitrogen atom; whereas methcathinone has three hydrogen atoms and a carbon atom "hooked to the nitrogen" atom. (Tr. 55). Beasley opined that the cathinone molecules and methcathinone molecules were "substantially similar," that is being "similar in chemical structure." (Tr. 56, 58). Beasley also testified that cathinone and methcathinone "are both stimulants." (Tr. 59). When asked on cross-examination about whether "the effect" of cathinone was "similar" to that of methcathinone, Beasley explained,

I would say they are similar in chemical structure but as far as the effect it would have on somebody I really cannot testify to the difference between the two.

(Tr. 57, 58). When further pressed by the trial court on this issue, Beasley stated,

I can testify that they are both stimulants. What I can't testify to is the severity or level of (inaudible) that the compounds have compared to each other. That would be more somebody in

---

1. Cathinone is a Schedule I controlled substance under the Federal Controlled Substances Act, and cathine is a Schedule IV substance under the Act. *See U.S. v. Caseer,* 399 F.3d 828, 833, 834 (6th Cir.2005).

Neither cathinone nor cathine appears in Indiana's listing of schedule I drugs, *see* I.C. § 35–48–2–4, or its listing of schedule II drugs. *See* I.C. § 35–48–2–4 and –6.

toxicology or pharmacology, which I really don't have the background to testify.

and that he lacked

enough understanding of that area to say that for example methcathinone is ten (10) times stronger than cathinone, I cannot testify to that.

(Tr. 59).

Counsel for both Mohamed and his co-defendant argued that Indiana law did not specify khat as a controlled or illegal substance. Mohamed's counsel also argued that the following were fatal to the State's obtaining a valid conviction: the lack of evidence on the comparative effect of cathinone on the central nervous system; the lack of knowledge by Mohamed with regard to "what was in a box that was behind his seat" or "its effect"; and that the analog statute was "constitutionally vague . . . because it does not ever define what substantially similar chemical structure is." (Tr. 66).

Finding "no evidence" as to delivery, the trial court concluded that neither the driver nor Mohamed was proven "to have possessed with the intent to deliver to another person," and acquitted them on the dealing charges. (Tr. 71). However, based on the evidence that cathinone and methcathinone "are both stimulants"; that "cathinone is similar chemically to a controlled substance"; and that the khat's "proximity, . . . visibility, . . . size" with respect to Mohamed's position in the vehicle supported the reasonable inference that he was "well aware of its presence and [had] the ability to control it," the trial court found Mohamed guilty of the possession charge. (Tr. 70, 72). When pressed by Mohamed's counsel as to whether the trial court found beyond a reasonable doubt that the evidence "show[ed] that the effect on the central nervous system is substantially similar to or greater than methcathi-

none," the trial court responded that it had drawn that inference from the fact that both were stimulants. (Tr. 71).

## DECISION

■ Mohamed argues that the statutory definition of a controlled substance analog, see IND. CODE § 35–48–1–9.3, is unconstitutionally vague in that it failed to provide him with sufficient notice of the fact that having khat plant material in his possession could subject him to criminal sanction. Mohamed also argues that there was insufficient evidence to support his conviction beyond a reasonable doubt. Because we find the latter argument dispositive, we do not reach his constitutional argument. See Williams v. State, 714 N.E.2d 644, 651–2 n. 6 (Ind.1999).

When reviewing a claim that evidence was insufficient to support a conviction, we do not reweigh the evidence or judge the credibility of witnesses, and we affirm if there is "substantial evidence of probative value supporting each element of the crime" from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. Davis v. State, 813 N.E.2d 1176, 1178 (Ind.2004).

■ Initially, we note that "it is well established that penal statutes must be strictly construed against the State." Sunday v. State, 720 N.E.2d 716, 719 (Ind. 1999). We turn to the statutory elements of the crime charged: possession of a controlled substance analog. As already noted, the legislature has defined a "controlled substance analog" as

a substance:

(1) the chemical structure of which is substantially similar to that of a controlled substance included in schedule I or II *and* that has; or

(2) that a person represents or intends to have;

a narcotic, stimulant, depressant, or hallucinogenic effect on the central nervous system substantially similar to or greater than the narcotic, stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance included in schedule I or II.

I.C. § 35–48–1–9.3(a) (emphasis added). Thus, the State was required to prove not only that Mohamed possessed an analog substance that has a substantially similar chemical structure to that of a controlled substance but *also*

- that the analog substance has an effect on the central nervous system "substantially similar to or greater than" the effect of the controlled substance, or
- that he represented or intended the analog substance to have an effect on the central nervous system "substantially similar to or greater than" the effect of the controlled substance.

I.C. § 35–48–2–4(f).

Beasley's testimony established that cathinone's chemical structure is substantially similar to that of methcathinone. However, as recounted above, at trial only Beasley testified about the effects of cathinone as compared to methcathinone, and his unequivocal testimony was that he had no knowledge of the comparative effects. Consistent with this record of the trial below, the State conceded at oral argument [2] that it had failed to meet its burden of proof with respect to the statutory element concerning the effects of the alleged analog substance. Because there is no evidence to establish this element, the evidence was insufficient to establish beyond a reasonable doubt that pursuant to Indiana Code section 35–48–1–9.3, cathi-

none is a controlled substance analog or that Mohamed possessed a controlled substance analog. Therefore, his conviction must be reversed.

Reversed.

SHARPNACK, J., and CRONE, J., concur.

---

**2.** We heard oral argument on this case at the Indiana University School of Law—Indianapolis on February 16, 2006. We thank the law school for its hospitality, appellate counsel for their able presentations, and the students for their participation in the subsequent discussion.