

FILED

Dec 16 2025, 8:50 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court



I N T H E

# Court of Appeals of Indiana

Mark Anthony Freeman,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

December 16, 2025

Court of Appeals Case No.
25A-CR-799

Appeal from the Tippecanoe Superior Court

The Honorable Randy J. Williams, Judge

Trial Court Cause No.
79D01-2310-F2-71

---

**Opinion by Judge Pyle**
Judges Vaidik and Mathias concur.

**Pyle, Judge.**

## Statement of the Case

Mark Anthony Freeman ("Freeman") appeals his conviction, following a jury trial, for Level 2 felony dealing in a Schedule I controlled substance.[1] Freeman argues that there is insufficient evidence to support his conviction. Concluding that the evidence is sufficient, we affirm Freeman's conviction.

We affirm.

## Issue

Whether there is sufficient evidence to support Freeman's conviction.

## Facts

On October 24, 2023, Freeman was at an apartment complex that was connected to a transitional housing center. The safety and shelter manager of the transitional housing center ("the manager"), who had previously given Freeman a trespass warning, observed Freeman carrying a backpack and going "into multiple apartments for a short amount of time." (Tr. Vol. 2 at 219). The manager contacted the police to escort Freeman off the property. When officers from the Lafayette Police Department ("the officers") arrived, the manager and

---

[1] IND. CODE § 35-48-4-2. Freeman was also convicted of Level 5 felony possession of methamphetamine and Class C misdemeanor possession of paraphernalia, but he does not challenge these convictions on appeal. Additionally, we note that, while Freeman asserts that he is also challenging his conviction for possession of a controlled substance, we need not address that issue because the trial court vacated that possession conviction during Freeman's sentencing hearing.

the officers reviewed surveillance video to see the last apartment that Freeman had entered and then went to that apartment.

[4] Ultimately, the officers searched Freeman and found $1,032 in cash and two plastic baggies containing a white crystalline substance. One of the baggies contained multiple smaller baggies or "dime bags" of the white crystalline substance.[2] (Tr. Vol. 2 at 180). Thereafter, the officers obtained a search warrant to search Freeman's backpack and discovered a large plastic baggie and larger grocery bag that both contained "a plant-like material that [the officers had] come to associate as spice." (Tr. Vol. 2 at 188). Additionally, the officers found a digital scale, three pipes, and several empty "dime bags[.]" (Tr. Vol. 2 at 188). The Indiana State Police Lab ("the Lab") later tested the substances and determined that the white crystalline substance was methamphetamine and had a total weight of 5.26 grams and that the plant-like material contained "ADB Butinaca" and had a total weight of 114 grams. (Tr. Vol. 2 at 235). At the time of Freeman's offense, ADB Butinaca was not on the statutory list of Schedule I controlled substances.[3]

[5] The State charged Freeman with Level 2 felony dealing in a Schedule I controlled substance, Class A misdemeanor possession of a controlled substance, Level 3 felony dealing in methamphetamine, Level 5 felony

---

[2] Dime bags are smaller baggies that are typically "used for distribution[.] (Tr. Vol. 2 at 180).

[3] Effective July 1, 2024, ADB Butinaca was included in the list of Scheduled I controlled substances in INDIANA CODE § 35-48-2-4.

possession of methamphetamine, and Class C misdemeanor possession of paraphernalia. For the Level 2 felony dealing in a Schedule I controlled substance charge, the State based that charge on Freeman possessing ADB Butinaca as a controlled substance analog and specifically alleged that Freeman "possess[ed], with intent to deliver, . . . a controlled substance analog, pure or adulterated, classified in Schedule I, to wit: a Synthetic Drug, and the amount of the drug involved was at least twenty-eight (28) grams[.]" (App. Vol. 2 at 14).

[6] In January 2025, the trial court held a three-day jury trial. During the trial, the forensic scientist from the Lab ("the forensic scientist") testified about his testing of the plant-like material that he had determined to contain ADB Butinaca. The forensic scientist testified that, at the time of Freeman's offense in 2023, ADB Butinaca was not considered to be a controlled substance but that it had "a substantially similar structure to ADB Pinaca, which is a controlled substance." (Tr. Vol. 2 at 235).[4] Additionally, the forensic scientist's lab report, which was admitted into evidence, provided that ADB Butinaca had "a substantially similar structure" to ADB Pinaca. (State's Ex. 29). According to the forensic scientist, ADB Butinaca was substantially similar to ADB Pinaca because it had "one difference in [its] structure." (Tr. Vol. 2 at 236).

---

[4] At the time of Freeman's offense, "[s]ynthetic drugs as defined in IC 35-31.5-2-321" were included in the list of Schedule I controlled substances, *see* I.C. § 35-48-2-4 (2023), and ADB Pinaca was included in that statutory list of synthetic drugs. *See* I.C. § 35-31.5-2-321(1)(JJJJ) (2023). INDIANA CODE § 35-31.5-2-321 was amended, effective July 1, 2025, and ADB Pinaca continues to be included in the statutory list of synthetic drugs. *See* I.C. § 35-31.5-2-321(1) (2025).

Specifically, the ADB Butinaca "has [a] butane structure, which is a four-carbon chain, and then the Pinaca has a five-carbon chain." (Tr. Vol. 2 at 237).

[7] During cross-examination, Freeman's counsel asked the forensic scientist if he could "testify as to [the] specific effects of [ADB Butinaca and ADB Pinaca] on the human nervous system." (Tr. Vol. 2 at 239). The forensic scientist replied that he could not provide testimony on such effects because that subject was "outside of [his] area of expertise." (Tr. Vol. 2 at 239). When Freeman's counsel asked whether the forensic scientist could "tell . . . whether or not [ADB Butinaca and ADB Pinaca] have a similar, greater than or less than effect on the human nervous system," the forensic scientist responded that he was "unable to make any [such] claims." (Tr. Vol. 2 at 239).

[8] Thereafter, the State called a drug task force detective ("the drug detective") as a witness. The drug detective, who had experience with narcotics investigations, testified about the factors involved in showing the difference between a drug dealer and a drug user, including the amount of drugs and the possession of a scale, baggies for distribution, and additional money. The State questioned the drug detective about "spice[,]" and the drug detective testified that "[s]pice is a synthetic cannabinoid" and is a "leafy substance" that is sprayed with various chemicals. (Tr. Vol. 2 at 248). Thereafter, the drug detective testified that spice has a "similar effect, but more adverse effect as far as THC and cannabis" and that it has "a harder high compared to just marijuana." (Tr. Vol. 2 at 248). Additionally, the drug detective opined, based

on his review of the evidence from this case, that "[i]t appeared that [Freeman] was dealing[.]" (Tr. Vol. 3 at 2).

[9] The State also questioned the drug detective about a jail call that Freeman had made the day after being arrested, and the State played that phone call for the jury. During that phone call, Freeman talked about the dealing charges against him and mentioned both "spice" and "ice" or methamphetamine. (Tr. Vol. 3 at 6). Additionally, Freeman discussed the weight of drugs and dollar amounts either paid or owed to him for spice.

[10] Following the State's presentation of evidence, Freeman moved for a directed verdict on the Level 2 felony dealing in a Schedule I controlled substance charge and the Class A misdemeanor possession of a controlled substance charge. Specifically, Freeman argued that the State failed to meet its burden of proving that the substance at issue met the statutory definition of a controlled substance analog contained in INDIANA CODE § 35-48-1-9.3(a) (2023) ("Controlled Substance Analog Definition Statute").[5] Freeman acknowledged that the State had met its burden of proving the first prong of the definition in subsection (a)(1) regarding the substance at issue being substantially similar to a statutorily-listed scheduled controlled substance ("the substantially similar prong"), but he asserted that the State had failed to show the second prong of the definition in subsection (a)(2) regarding the substance at issue having or

---

[5] We note that, effective July 1, 2025, the Controlled Substance Analog Definition Statute has a new statutory citation of INDIANA CODE § 35-48-1.1-8.

being represented or intended to have a narcotic, stimulant, depressant, or hallucinogenic effect on the central nervous system substantially similar or greater than that of a statutorily-listed scheduled controlled substance ("the effect prong").

[11] The State responded that it had established the effect prong because: (1) Freeman had, during his jail phone call, represented the substance he was selling as spice; and (2) the trial court would be instructing the jury on INDIANA CODE § 35-48-4-0.5 ("Controlled Substance Analog Effects Statute")[6] and that there were some factors in that statute that the jury could consider in regard to the effect prong.

[12] The trial court took the matter under advisement and then issued an order denying Freeman's motion for directed verdict. In its order, the trial court "f[ound] but barely, [that] the State ha[d] met its burden to survive" Freeman's directed verdict motion. (App. Vol. 2 at 23).

[13] During closing arguments, the State argued that the ADB Butinaca possessed by Freeman met the statutory definition of a controlled substance analog. In regard to the effect prong of the Controlled Substance Analog Definition Statute, the State argued that the jury would "have to determine the effect of the

_____

[6] We note that the record before us does not specifically reference the statutory citation for this statute. Although some of the statutory factors were discussed by the State when it argued against Freeman's directed verdict motion and when it argued to the jury, as well as being included in the trial court's final instructions to the jury, neither the State nor the trial court specifically referenced the statutory cite.

controlled substance analog[.]" (Tr. Vol. 3 at 34). According to the State, the jury could determine the effect by considering various factors, including Freeman's representation of the substance as being spice, the substance being "clandestinely manufactured or distributed[,]" "the actual or relative potential for abuse[,] and the risk to the public health that the substance presents." (Tr. Vol. 3 at 35). The State pointed out that Freeman's representation that the drug was spice showed that he had "represent[ed] to those who he's selling and delivering the substance to that that's what they[] [were] getting." (Tr. Vol. 3 at 34). As for the clandestine factor, the State pointed out that the substance was not being sold in "a tea shop . . . or a store gas station" and that, instead, it involved Freeman having "a plastic grocery bag full" of the substance. (Tr. Vol. 3 at 36). Additionally, the State argued that the jury could "make some inferences" of the potential for abuse and public health risk factors based on the evidence that the legislature had subsequently added ADB Butinaca to the list of controlled substances and that "[t]he legislature did not do that for no reason." (Tr. Vol. 3 at 35).

[14] Thereafter, the trial court instructed the jury on the definition of a controlled substance analog in the Controlled Substance Analog Definition Statute and on some of the factors listed in the Controlled Substance Analog Effect Statute. As to the latter statute, the trial court provided the following instruction:

> In determining whether a controlled substance analog has a narcotic, stimulant, depressant, or hallucinogenic effect on the central nervous system, or is represented or intended to have a

narcotic, stimulant, depressant, or hallucinogenic effect on the central nervous system, you may consider the following:

> (1) the actual or relative potential for abuse of the substance;
>
> (2) the risk to the public health presented by the substance;
>
> (3) whether the substance was diverted from legitimate channels or clandestinely imported, manufactured, or distributed;
>
> (4) any other relevant factor.

(Tr. Vol. 3 at 56). After deliberating, the jury found Freeman guilty as charged.

[15] During Freeman's sentencing hearing, the trial court vacated Freeman's two possession convictions. The trial court imposed the following concurrent sentences: a twenty (20) year sentence for Freeman's Level 2 felony dealing in a Schedule I controlled substance conviction; a ten (10) year sentence for his Level 3 felony dealing in methamphetamine conviction; and a sixty (60) day sentence for his Class C misdemeanor possession of paraphernalia conviction. Based on that aggregate twenty (20) year sentence, the trial court ordered Freeman to serve sixteen (16) years executed in the Indiana Department of Correction, two (2) years on community corrections, and two (2) years suspended to supervised probation.

[16] Freeman now appeals.

## Decision

[17] Freeman argues that the evidence was insufficient to support his conviction for Level 2 felony dealing in a Schedule I controlled substance. Specifically, Freeman contends that the State failed to present sufficient evidence that the plant-like substance that he possessed—the ADB Butinaca—was a controlled substance analog as defined by the prevailing statute at the time of his crime.

[18] "'[I]t is well established that penal statutes must be strictly construed against the State.'" *Mohamed v. State*, 843 N.E.2d 553, 555 (Ind. Ct. App. 2006) (quoting *Sunday v. State*, 720 N.E.2d 716, 719 (Ind. 1999)). When construing a statute, we look to the plain, ordinary, and usual meaning of the language of the statute, and we do not presume that the legislature intended statutory language to be applied illogically or to bring about an unjust or absurd result. *Sunday*, 720 N.E.2d at 718-19.

[19] "Sufficiency-of-the-evidence claims trigger a deferential standard of review in which we neither reweigh the evidence nor judge witness credibility, instead reserving those matters to the province of the jury." *Hancz-Barron v. State*, 235 N.E.3d 1237, 1244 (Ind. 2024) (cleaned up). "A conviction is supported by sufficient evidence if there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Id.* (cleaned up). "In conducting that review, we consider only the evidence that supports the jury's determination, not evidence that might undermine it." *Id.* Additionally, our

Indiana Supreme Court has explained that "when determining whether the elements of an offense are proven beyond a reasonable doubt, a fact-finder may consider both the evidence *and the resulting reasonable inferences*." *Thang v. State*, 10 N.E.3d 1256, 1260 (Ind. 2014) (emphasis in original).

[20] The dealing in a Schedule I controlled substance statute, INDIANA CODE § 35-48-4-2, provides, in relevant part, that a "person who . . . possesses, with intent to . . . deliver . . . a controlled substance or controlled substance analog, pure or adulterated, classified in schedule I . . . commits dealing in a schedule I . . . controlled substance, a Level 6 felony." I.C. § 35-48-4-2(a)(2)(C). "The offense is a Level 2 felony if . . . the amount of the drug involved is at least twenty-eight (28) grams[.]" I.C. § 35-48-4-2(f)(1). The State based Freeman's Level 2 felony dealing in a Schedule I controlled substance charge on Freeman's possession ADB Butinaca as a controlled substance analog. At the time of Freeman's offense, ADB Butinaca was not on the statutory list of Schedule I controlled substances.[7] *See* I.C. § 35-48-2-4 (2023). Thus, the State was required to prove beyond a reasonable doubt that Freeman possessed a controlled substance analog, that he had the intent to deliver the substance, and that it weighed at least twenty-eight grams. Freeman challenges only the element that the substance he had possessed was a controlled substance analog.

---

[7] Effective July 1, 2024, ADB Butinaca was included in the list of Scheduled I controlled substances in INDIANA CODE § 35-48-2-4.

The Controlled Substance Analog Definition Statute in effect at the time of Freeman's offense, INDIANA CODE § 35-48-1-9.3, provided, in relevant part, as follows:

> (a) "Controlled substance analog" means a substance that, due to its chemical structure and potential for abuse or misuse, meets the following criteria:
>
>> (1) The substance is substantially similar to a controlled substance classified under Ind. Code § 35-48-2.
>>
>> (2) The substance has a narcotic, stimulant, depressant, or hallucinogenic effect on the central nervous system or is represented or intended to have a narcotic, stimulant, depressant, or hallucinogenic effect on the central nervous system substantially similar to or greater than that of a controlled substance classified under Ind. Code § 35-48-2.
>
> * * * * *
>
> (c) For purposes of subsection (a), "substantially similar", as it applies to the chemical structure of a substance, means that the chemical structure of the substance, when compared to the structure of a controlled substance, has a single difference in the structural formula that substitutes one (1) atom or functional group for another, including:
>
>> (1) one (1) halogen for another halogen;
>>
>> (2) one (1) hydrogen for a halogen;
>>
>> (3) one (1) halogen for a hydrogen; or
>>
>> (4) an alkyl group added or deleted:
>>
>>> (A) as a side chain to or from a molecule; or
>>>
>>> (B) from a side chain of a molecule.

I.C. § 35-48-1-9.3 (2023).

[22]     INDIANA CODE § 35-48-4-0.5, Controlled Substance Analog Effects Statute,

provides, in relevant part, as follows:

> (a) In determining whether a controlled substance analog has a
> narcotic, stimulant, depressant, or hallucinogenic effect on the
> central nervous system, or is represented or intended to have a
> narcotic, stimulant, depressant, or hallucinogenic effect on the
> central nervous system, the trier of fact may consider the
> following:
>
>> (1) The actual or relative potential for abuse of the
>> substance.
>>
>> (2) Scientific evidence of the pharmacological effect of the
>> substance, if known.
>>
>> (3) The state of current scientific knowledge regarding the
>> substance.
>>
>> (4) The history and current pattern of abuse of the
>> substance.
>>
>> (5) The scope, duration, and significance of abuse of the
>> substance.
>>
>> (6) The risk to the public health presented by the
>> substance.
>>
>> (7) The substance's psychological or physiological
>> dependence liability.
>>
>> (8) The behavior demonstrated by the defendant, if the
>> defendant is known to have consumed the substance, or by
>> the end user of the substance that is alleged to have been
>> delivered or otherwise transferred by the defendant.

(9) Whether the substance was diverted from legitimate channels or clandestinely imported, manufactured, or distributed.

(10) Whether the substance is an immediate precursor of a substance controlled under this article.

(11) A comparison of the accepted methods of marketing, distribution, and sales of the substance with the methods of marketing, distribution, and sales of the substance that the substance is purported to be, including:

>(A) the packaging of the substance and its appearance in overall finished dosage form;

>(B) oral or written statements or representations concerning the substance;

>(C) the methods by which the substance is distributed; and

>(D) the manner in which the substance is sold to the public.

(12) Any other relevant factor.

I.C. § 35-48-4-0.5.[8]

[23] Here, Freeman argues that the State failed to present sufficient evidence to show beyond a reasonable doubt that the ADB Butinaca was a controlled substance analog as defined by the then prevailing Controlled Substance

---

[8] We pause to note that we are somewhat perplexed that neither party on appeal cites to or mentions this Controlled Substance Analog Effects Statute, especially when the trial court instructed the jury on some of the factors within the statute and the State relied upon those factors when arguing to the jury that the State had provided evidence to meet the effect prong of the Controlled Substance Analog Definition Statute.

Analog Definition Statute. Freeman acknowledges that the State presented evidence to meet the substantially similar prong in subsection (a)(1), but he contends that the State failed to present sufficient evidence to meet the effect prong in subsection (a)(2). Freeman points out that the forensic scientist specifically stated that he was unable to provide testimony regarding the comparative effects of ADB Butinaca and ADB Pinaca on the central nervous system because that subject was "outside of [his] area of expertise." (Tr. Vol. 2 at 239). In support of Freeman's argument, he cites to *Mohamed v. State*, 843 N.E.2d 553 (Ind. Ct. App. 2006).

[24] In *Mohamed*, our Court reversed a defendant's conviction for Class D felony possession of a controlled substance analog where we held that the State had failed to provide sufficient evidence that the defendant possessed a controlled substance analog. *Mohamed*, 843 N.E.2d at 556. The defendant possessed a plant material that contained cathinone, which was not listed in the statutory list of Schedule I drugs. During the defendant's bench trial, the State presented testimony from a Marion County Crime Lab chemist, who testified that the chemical structure of cathinone was "very similar" to the chemical structure of methcathinone, which was listed as a Scheduled I controlled substance under INDIANA CODE § 35-48-2-4(f). *Id.* at 554. The chemist testified that cathinone and methcathinone were both stimulants and "opined" that the two substances' molecules were "substantially similar[.]" *Id.* (internal quotation marks omitted). However, the chemist testified that he "d[id]n't have the background to testify" regarding the comparative effects of cathinone to methcathinone, and

he stated that any such information would need to come from "somebody in toxicology or pharmacology[.]" *Id.* at 554-55.

[25] On appeal, the defendant argued that the evidence was insufficient to support his conviction because the State had failed to present evidence on the comparative effect of cathinone on the central nervous system. During an oral argument, the State conceded that "it had failed to meet its burden of proof with respect to the statutory element concerning the effects of the alleged analog substance." *Id.* at 556. We held that there was no evidence to establish the effect prong in subsection (a)(2) of INDIANA CODE § 35-48-1-9.3 and that, therefore, there was insufficient evidence to show that the defendant possessed a controlled substance analog. *Id.* As a result, we reversed the defendant's conviction. *Id.*

[26] In response to Freeman's argument, the State acknowledges that the forensic scientist was unable to provide any testimony to establish the effect prong in subsection (a)(2). However, the State contends that this prong was proven by Freeman's jail phone call evidence and the drug detective's testimony. Specifically, the State asserts that "circumstantial evidence, including [Freeman's] statements made in a phone call and an experienced narcotics officer's testimony, showed that [Freeman] represented the material to be spice, which has a greater effect on a user than marijuana, which is a scheduled I controlled substance." (State's Br. 7). Additionally, the State argues that Freeman's reliance on *Mohamed* "misses the mark." (State's Br. 12).

[27] We agree with the State that *Mohamed* is distinguishable from Freeman's case and that the evidence presented is sufficient to support Freeman's conviction. Unlike *Mohamed*, Freeman's case did not involve a complete lack of evidence regarding the effect prong. Also unlike *Mohamed*, the trial court in Freeman's case instructed the jury on relevant factors in the Controlled Substance Analog Effects Statute that the jury could consider when determining whether a controlled substance analog had been represented or intended to have a narcotic, stimulant, depressant, or hallucinogenic effect on the central nervous system.[9] Here, the State presented evidence to address the effect prong of the Controlled Substance Analog Definition Statute in conjunction with the relevant factors in the Controlled Substance Analog Effects Statute. The State presented evidence that Freeman, who possessed methamphetamine and the plant-like substance at issue, was seen carrying a backpack and going "into multiple apartments for a short amount of time." (Tr. Vol. 2 at 219). The evidence also revealed that the police searched Freeman and his backpack and found 5.26 grams of methamphetamine, 114 grams of the plant-like material containing ADB Butinaca, $1,032 in cash, a digital scale, three pipes, and

---

[9] We note that the Controlled Substance Analog Effects Statute, INDIANA CODE § 35-48-4-0.5, was first enacted in 2003 and, thus, existed before the 2006 *Mohamed* case. However, at the time of the *Mohamed* case, the statute did not contain the factors to be considered by the trier of fact in its determination of the effect prong. *See* I.C. § 35-48-4-0.5 (2003). At that time, the statute merely provided as follows: "For purposes of this chapter, a 'controlled substance analog' is considered to be a controlled substance in schedule I if the analog is in whole or in part intended for human consumption." *Id.* The legislature amended this statute in 2019 and added the subsection setting forth the factors to be considered by the trier of fact in its determination of the effect prong. *See* I.C. § 35-48-4-0.5 (2019).

several empty dime bags. Moreover, the State presented evidence that Freeman had represented the substance at issue to be spice. During Freeman's jail phone call, he mentioned "spice" and "ice" or methamphetamine, as well as the weight of drugs and dollar amounts either paid or owed to him for spice. (Tr. Vol. 3 at 6). Importantly, the State presented skilled witness testimony from the drug detective, who had experience with narcotics investigations and who testified about the effect of spice compared to a controlled substance. Specifically, the drug detective testified that spice had a "similar effect, but more adverse effect as far as THC and cannabis" and that it has "a harder high compared to just marijuana." (Tr. Vol. 2 at 248). We acknowledge that the drug detective did not specifically mention the central nervous system, but a reasonable inference from his testimony about the effect of the substance at issue is that the "harder high" effect was on the central nervous system.[10]

[28] Freeman's argument challenging the sufficiency of the evidence is nothing more than a request to reweigh the evidence and the trial court's credibility determination, which we will not do. *See Hancz-Barron*, 235 N.E.3d at 1244. The evidence presented at the jury trial and the resulting reasonable inferences drawn therefrom were sufficient for the jury to conclude that Freeman possessed a controlled substance analog. *See Thang*, 10 N.E.3d at 1260 (explaining that "when determining whether the elements of an offense

---

[10] While we conclude that the State's evidence was sufficient in this specific instance, we note that a better practice for addressing the effect prong of the Controlled Substance Analog Definition Statute would be to present testimony from a skilled or expert witness who addresses all specific aspects of the effect prong.

are proven beyond a reasonable doubt, a fact-finder may consider both the evidence *and the resulting reasonable inferences*").  Accordingly, we affirm Freeman's Level 2 felony dealing in a Schedule I controlled substance conviction.

Affirmed.

Vaidik, J., and Mathias, J., concur.

ATTORNEY FOR APPELLANT

Steven Knecht
Tippecanoe County Public Defender's Office
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Daylon L. Welliver
Deputy Attorney General
Indianapolis, Indiana